730 S.E.2d 405

**The ESTATE OF Roger G. FUSSELL and Andrea M. Simmons, Executrix, Petitioners**

v.

**Kristi FORTNEY and Chanda Collette, Respondents.**

No. 11–0428.

Supreme Court of Appeals of West Virginia.

Submitted May 22, 2012.

Decided June 12, 2012.

---

John J. Wallace, IV, Esq., Joseph A. Wallace, Esq., Wallace Law Offices, L.C., Elkins, WV, Attorneys on behalf of Petitioners.

Harry A. Smith, III, Esq., McNeer, Highland, McMunn and Varner, L.C., Elkins, WV, Attorney on behalf of Respondents.

KETCHUM, Chief Justice:

In this matter we consider whether a decedent's will that directs "all my just debts be paid as soon as conveniently possible after the date of my death" (hereinafter "just debts"), obligates the decedent's estate to pay the mortgage on two parcels of real property devised to the Respondents, Kristi Fortney and Chanda Collette (hereinafter "Respondents"). The Circuit Court of Randolph County determined that the "just debts" clause required the decedent's estate to pay the mortgage on these two properties and deliver an *unencumbered* interest in the two properties to the Respondents.

In this appeal, Petitioner Andrea Simmons, the executrix of the will (hereinafter "Ms. Simmons" or "executrix"), argues that the "just debts" clause is boilerplate language that should not obligate the estate to pay the mortgage on the two devised properties. Ms. Simmons states that the circuit court erred in its focus on the "just debts" clause and discounted other language in the will showing the decedent's intention to devise his *encumbered* interest in the two properties to the Respondents.

The Respondents argue that the circuit court's ruling should be affirmed because the will's direction to pay off all of the decedent's just debts is clear and unambiguous.

Upon careful review, and for the reasons set forth herein, we affirm the decision of the circuit court.

## I. Facts & Procedural Background

Roger G. Fussell, a resident of Randolph County, West Virginia, died on December 21, 2009, leaving a last will and testament dated November 5, 2009 (hereinafter "will"). The first instruction in the will states, "FIRST: I desire that all my just debts be paid as soon as conveniently possible after the date of my death." Following this "just debts" instruction, Mr. Fussell's will devised two properties to his daughters, Kristi Fortney and Chanda Collette:

> I give ... my daughter, Kristi Fortney ... my right, title and interest in and to my lot and house at 414 6th Street, Glenmore Addition, near Elkins, Randolph County, West Virginia.

> I give ... my right, title and interest in and to my lot and house located adjacent to King's Run Road in Randolph County, West Virginia to my daughter, Chanda Collette of Elkins, West Virginia.

These two properties were encumbered by a single deed of trust with a face value of $223,000.00. When this lawsuit was filed, approximately $120,000.00 was still owed on the mortgage.

The will directed that a third daughter, Andrea Simmons, and her husband, were to receive the "rest, residue and remainder of my property, whether the same be real, personal or mixed[.]"[1] Ms. Simmons was appointed as the executrix of the will.

Ms. Simmons, in her role as executrix, made the January and February 2010 mortgage payment on the two properties left to the Respondents. Ms. Simmons refused to make further mortgage payments after February 2010. The Respondents subsequently filed a complaint for declaratory judgment and injunctive relief in the Circuit Court of Randolph County, arguing that the "just debts" clause required the estate to continue making the mortgage payments. The circuit court held an initial hearing on September 14, 2010, and granted a preliminary injunction requiring the estate to make the monthly mortgage payments.[2]

---

1. In addition to the two properties the decedent bequeathed to the Respondents, the will directed that the decedent's wife, Joann Fussell, receive "her statutory share as provided by the laws of the State of West Virginia." Joann Fussell is not a party to this lawsuit.

2. During this hearing, the circuit court asked the parties whether the estate had sufficient assets to cover the $120,000.00 debt owed on the two properties left to the Respondents. Counsel for the Respondents' stated that the remainder of the estate included 55 properties located in five states, including a hotel building, personal resi-

After finding that there were no factual issues for a jury to decide, the circuit court held a final hearing on December 1, 2010. At this hearing, both sides agreed that the issue—whether a "just debts" clause in a will obligates the estate to pay the remaining mortgage on devised real property—was a matter of first impression in West Virginia. The Respondents argued that the plain language of the will required the estate to pay all of the decedent's outstanding debts, including the mortgage on the two properties devised to the Respondents. The Respondents stated that the two properties were covered by a single deed of trust and that if the decedent intended the Respondents to receive his *encumbered* interest in these properties, the will would have set forth a formula apportioning the percentage of the mortgage that each daughter was responsible for paying. The Respondents also stated that the remaining mortgage on these two properties was relatively small in comparison to the overall value of the estate.

In response, Ms. Simmons argued that the "just debts" clause was boilerplate language that should not obligate the estate to pay the outstanding mortgage on the two devised properties. Ms. Simmons also argued that the decedent left the Respondents his "right, title, and interest" in the two properties and that this language shows the decedent's intention that the Respondents receive the properties subject to the remaining mortgage.

The circuit court ruled in favor of the Respondents and ordered the estate to deliver an *unencumbered* interest in the two properties to them. The circuit court determined that "[t]he will directed that *all* his just debts be paid after his death. This includes the debt on the property which Ms. Fortney and Ms. Collette inherited." (Emphasis added by the circuit court). The circuit court's February 10, 2011, judgment order explains:

> The testamentary language requiring the payment of all of Mr. Fussell's debts is inclusive of the debt which is secured by the real estate [that] was devised to the Plaintiffs.
>
> Since Mr. Fussell's will requires that all debts be paid by the Estate, the debt secured by the said Davis Trust Company deed of trust is to be paid by the Estate, resulting in the Plaintiffs' acquiring unencumbered title to the real estate which was devised to them.

Following the entry of this judgment order, Ms. Simmons filed the present appeal.

## II. Standard of Review

 This appeal follows a declaratory judgment action in the circuit court. Because the purpose of a declaratory judgment action is to resolve legal questions, "a circuit court's entry of a declaratory judgment is reviewed *de novo.*" Syllabus Point 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995). Further, "a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo;* however, any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard." *Id.,* 195 W.Va. at 612, 466 S.E.2d at 463.

## III. Analysis

 Before addressing the specific question before us, we note that, "[t]he paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy." Syllabus Point 1, *Farmers and Merchants Bank v. Farmers and Merchants Bank,* 158 W.Va. 1012, 216 S.E.2d 769 (1975). "The intention of the testator is to be gathered from the whole instrument, not from one part

dences, farms, and timber land. The Respondents' lawyer stated that the estate also contained "seven vehicles, cars or trucks. It's got 13 tractors, six Cub tractors. It's got various farm equipment. It's got art collection [sic], gun collection, coin collection and interestingly enough, it had ... some 96 head of cattle." The Respondents' lawyer told the circuit court that the decedent valued his estate to be worth $12,000,000.00 (12 million dollars).

During oral argument before this Court, counsel for Ms. Simmons stated that the estate was not worth $12,000,000.00 (12 million dollars). He said the estate was worth two to three million dollars.

alone." *Emmert v. Old Nat'l Bank,* 162 W.Va. 48, 54, 246 S.E.2d 236, 241 (1978).[3] In *Hobbs v. Brenneman,* 94 W.Va. 320, 326, 118 S.E. 546, 549 (1923), we described the role of the judiciary in ascertaining a testator's intent:

> When the intention is ascertained from an examination of all its parts the problem is solved. The interpretation of a will is simply a judicial determination of what the testator intended; and the rules of interpretation and construction for that purpose formulated by the courts in the evolution of jurisprudence through the centuries are founded on reason and practical experience. It is wise to follow them, bearing in mind always that the intention is the guiding star, and when that is clear from a study of the will in its entirety, any arbitrary rule, however ancient and sacrosanct, applicable to any of its parts, must yield to the clear intention.

With this background in mind, we examine whether the "just debts" clause in the decedent's will obligates his estate to pay the mortgage on the two properties devised to the Respondents. There is an extensive body of law addressing whether a devisee of real property is entitled to have encumbrances upon the property paid by the personalty of a decedent's estate.[4] This law is referred to as the doctrine of exoneration.

The common law doctrine of exoneration provides that unless a will specifically states otherwise, "an heir or devisee is generally entitled to have encumbrances upon real estate paid by the estate's personalty[.]" *In re Estate of Vincent,* 98 S.W.3d 146, 148 (Tenn. 2003). This law was first recognized in England in the early eighteenth century.

> The doctrine of exoneration originated in English common law. English cases from the early eighteenth century demonstrate that an heir or devisee of real property could look to a decedent's personal estate to satisfy any mortgage debt remaining on

a decedent's probate property. The doctrine of exoneration stems from the broad English common law rule that all debts of the deceased were to be paid from his personal estate.

Thomas E. Clary, III, "Property—In Re Estate of Vincent: The Tennessee Supreme Court Declines to Extend the Common Law Doctrine of Exoneration to Survivorship Property," 34 U. Mem. L. Rev. 695, 697 (2004).

The doctrine of exoneration has been recognized and applied by courts in the United States since the late eighteenth century. *See e.g., Ruston's Ex'rs v. Ruston,* 2 U.S. 243, 2 Dall. 243, 1 L.Ed. 356 (1796). This Court has not directly addressed the common law doctrine of exoneration. However, Syllabus Point 2 of *McComb v. McComb,* 121 W.Va. 53, 200 S.E. 49 (1939), indicates that West Virginia follows the doctrine of exoneration:

> When a will charges all of the testator's personal property with the payment of "all my just debts", the real estate of the testator subject to a lien indebtedness is to be exonerated by applying first, the income and thereafter, if necessary, the corpus of his personal estate.

*McComb* does not discuss the doctrine of exoneration or provide specific direction on how it should be applied. This Court has not had occasion to address the doctrine of exoneration since *McComb* was decided. We therefore deem it necessary to examine how courts in other jurisdictions have dealt with this issue.

A number of jurisdictions adhere to the common law doctrine of exoneration. For instance, in *Lemp v. Keto,* 678 A.2d 1010, 1015 (D.C.1996), the court stated "it has been repeatedly recognized as 'well settled that the common law rule of exoneration is in effect in the District of Columbia.'" (citation omitted). The court in *Lemp* explained

---

**3.** *See also* Syllabus Point 2, in part, *Butler v. Rader,* 155 W.Va. 838, 187 S.E.2d 627 (1972) ("In construing a will the intention must be ascertained from the words used by the testator, considered in light of the language of the entire will and the circumstances surrounding the testator when he made the will.").

**4.** *See generally,* "Right of heir or devisee to have realty exonerated from lien thereon at expense of personal estate," 4 A.L.R.3d 1023 (1965).

that "the rule of exoneration operates only in the absence of an expression of intent by the decedent. Indeed, where the decedent's intent is discernible—either through the content of the will or surrounding circumstances—the rule of exoneration has no application." *Id.* Similarly, in *Manders v. King*, 284 Ga. 338, 339, 667 S.E.2d 59, 60 (2008), the court stated, "Georgia is one of several states adhering to the common-law doctrine of exoneration, which provides that, unless a will specifically provides otherwise, an heir or devisee of real property may look to the decedent's personal property for satisfaction of liens on devised real property[.]" Tennessee also follows the doctrine of exoneration. *See Wilson v. Smith*, 50 Tenn.App. 188, 360 S.W.2d 78 (1962) (The court found that the debts of the estate, including debts secured by the real estate, must be paid out of the testator's personal estate.).[5]

While the foregoing jurisdictions adhere to the common law doctrine of exoneration, a number of states have abrogated the common law doctrine through statutory enactment or through the adoption of the Uniform Probate Code. States that have enacted statutes abrogating the doctrine of exoneration require a testator's will to specifically direct that exoneration is intended for encumbered property. For example, Ohio abrogated the doctrine of exoneration through the following statute:

> If real property devised in a will is subject to a mortgage lien that exists on the date of the testator's death, the person taking the real property under the devise

has no right of exoneration for the mortgage lien, regardless of a general direction in the will to pay the testator's debts, unless the will specifically provides a right of exoneration that extends to that lien.[6]

*Ohio Rev.Code Ann.* § 2113.52(B) [2011].

Other states have abrogated the doctrine of exoneration by enacting § 2–607 of the Uniform Probate Code (hereinafter "UPC"). The UPC requires a devisee of real property to take the property subject to any encumbrance when a will is silent as to exoneration. The UPC also provides that generic language in a will calling for the payment of debts is insufficient to invoke exoneration. Nebraska is one of several states that follows the UPC approach. It enacted *Neb. Rev. St.* § 30–2347 [1974], which states "[a] specific devise passes subject to any security interest existing at the date of death, without right of exoneration, regardless of a general directive in the will to pay debts."[7]

 When considering how other courts have dealt with the doctrine of exoneration, the prevailing trend is that the states that have abrogated the doctrine have done so through statutory enactment or through the adoption of UPC § 2–607. Our Legislature has not enacted a statute abrogating the doctrine of exoneration, nor has it adopted § 2–607 of the UPC. In the absence of this direction from our Legislature, and because of this Court's holding in syllabus point 2 of *McComb*, we will not depart from the longstanding common law doctrine of exoneration. We therefore hold that under the common law doctrine of exoneration, a devisee is

---

**5.** *See also, In re Estate of Vincent*, 98 S.W.3d 146, 149 (Tenn.2003). (The court recognized the doctrine of exoneration remained in effect in Tennessee, but declined to extend the doctrine to real property passing by right of survivorship.).

**6.** Two more examples of this type of statute abrogating the doctrine of exoneration are found in New Jersey and Oklahoma. *See N.J.S.A.* 3B:25–1 [2005] ("When property subject to a mortgage or security interest descends to an heir or passes to a devisee, the heir or devisee shall not be entitled to have the mortgage or security interest discharged out of any other property of the ancestor or testator, but the property so descending or passing to the person shall be primarily liable for the mortgage or secured debt, unless the will of the testator shall direct that the mortgage or

security interest be otherwise paid. A general direction in the will to pay debts shall not be deemed a direction to pay the mortgage or security interest."); and *Okla. Stat. Ann. tit.* 46, § 5 [2002] ("When real property, subject to a mortgage, passes by succession or will, the successor or devisee must satisfy the mortgage out of his own property, without resorting to the executor or administrator of the mortgagor, unless there is an express direction in the will of the mortgagor that the mortgage shall be otherwise paid.").

**7.** This statutory language is taken directly from § 2–607 of the UPC. "At least nineteen states have abrogated the doctrine of exoneration by enactment of Uniform Probate Code § 2–607[.]" *Manders v. King*, 284 Ga. 338, 339, 667 S.E.2d 59, 60 (2008).

generally entitled to have encumbrances upon real property paid by the estate's personalty, unless the will directs otherwise.

■ In the present case, the decedent's will directed that "all my just debts be paid as soon as conveniently possible after the date of my death." The executrix argues that, despite this general direction to pay all debts, the devise of "my right, title, and interest in the property" demonstrates the decedent's clear intention that the Respondents receive his *encumbered* interest in the two devised properties. We disagree.

The "right, title, and interest language" is capable of more than one interpretation. As one court dealing with this issue observed:

> [W]e do not believe the devise of "all right, title, and interest of whatever kind I may have at the time of my death" effectively negates exoneration by necessarily implying that the devisee takes subject to a mortgage. While one could read that language to suggest a mortgage limitation on the devise, that language is equally consistent with the idea that the testator intended to devise his or her full fee interest ... free and clear. *See Kent v. McCaslin*, 238 Miss. 129, 117 So.2d 804, 807 (1960) (testator's gift of "my interest" in cotton gin real property denoted "title," not merely "equity subject to any liens thereon," and thus absent "clearly implied" intention not to exonerate, specific devisee took property free of vendor's lien)[.]

*Lemp*, 678 A.2d at 1019. We agree with this reasoning and find that the "right, title, and interest" language, standing alone, is not sufficient to negate exoneration in this case.

The Respondents contend that had the decedent intended to deliver his *encumbered* interest in the two properties to them, his will would have stated the percentage of the mortgage that each was responsible for paying. We agree with the Respondents and find that the lack of such a direction apportioning the mortgage payments, combined with the general direction to pay all "just debts," weighs in favor of applying the doctrine of exoneration in this case.[8]

Because the decedent's will contains a general direction to pay off all of his "just debts," and because the will does not specifically exempt the mortgage covering the two properties devised to the Respondents from this general direction, we find that the doctrine of exoneration is applicable to this case. Under the doctrine of exoneration, the Respondents are entitled to receive an *unencumbered* interest in the two devised properties.

■ We therefore agree with the circuit court's conclusion that "Mr. Fussell's will requires that all debts be paid by the Estate, the debt secured by the ... deed of trust is to be paid by the Estate, resulting in the Plaintiffs' acquiring unencumbered title to the real estate which was devised to them."[9]

---

8. Another factor weighing in the Respondents favor is the size of the decedent's estate compared with the amount to be exonerated. Counsel for the Respondents estimated that the estate was worth $12,000,000.00. Counsel for the executrix said the estate was worth two to three million dollars. Based on either estimate, the remaining mortgage on the two properties, approximately $120,000.00, is a relatively small amount compared to the estate's overall worth. One commentator observed that, "[t]he fact that paying the mortgage debt out of the estate generally, will leave little or nothing for other beneficiaries, to whom testator apparently intended to give a substantial portion of his estate, tends to show the testator did not intend to exonerate such realty." 4 Bowe–Parker: Page on Wills, § 52.20 at 217 (2005).

In the present case, the multi-million dollar residuary devised to Ms. Simmons and her husband will not be substantially lessened by exonerating the two properties the decedent left to the Respondents. Should a case arise in the future in which exonerating real property would leave little or nothing for other beneficiaries to whom the testator intended to give a substantial portion of his/her estate, a court could consider that factor along with the other relevant facts of the particular case.

9. We decline to address Ms. Simmons' argument that the circuit court committed error during the initial hearing in this matter by denying her motion for the Respondents to post bond. We note that the circuit court stated, "should Defendants (Ms. Simmons) ultimately prevail, the Court will consider granting the appropriate relief." Because the Respondents prevailed below and because we now affirm the circuit court's order, this issue is moot.

### IV. Conclusion

The circuit court's February 10, 2011, judgment order is affirmed.

Affirmed.