COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, White and Frucci
Argued at Lexington, Virginia

**PUBLISHED**

RAE LEE DAVIS

v.        Record No. 1764-23-3

SUSAN D. GOFORTH, ET AL.

OPINION BY
JUDGE KIMBERLEY SLAYTON WHITE
DECEMBER 10, 2024

FROM THE CIRCUIT COURT OF WYTHE COUNTY
Josiah T. Showalter, Jr., Judge

Tommy Joe Williams (Tommy Joe Williams, P.C., on briefs), for
appellant.

E. Kyle McNew (Christina R. Dimeo; James K. Cowan, Jr.; H.
Gregory Campbell, Jr.; MichieHamlett PLLC; CowanPerry, P.C.; H.
Gregory Campbell, Jr., P.C., on brief), for appellees.

Samuel "Dickey" Davis died testate in 2013, devising the real property known as

Armentrout Farm to his spouse, Rae Lee Mills.  Rae Lee brought this action to circuit court

claiming that Garnet Davis, Jr., the Executor of Dickey's Estate, erred by not exonerating

Armentrout Farm before it passed to her.  The circuit court held that, under Code § 64.2-531(A),[1]

Dickey's will did not set out the requisite "contrary intent" to the statutory presumption of

nonexoneration for the property to pass free and clear of any encumbrances.  Rae Lee appeals,

arguing that the circuit court erred by finding that Dickey's will did not overcome the

presumption of nonexoneration.

---

[1] Code § 64.2-531 was amended by the General Assembly in 2024.  Code § 64.2-531(A) was in effect at the time this case was decided by the trial court, but this provision is now codified as Code § 64.2-531(B).  This Court will refer to Code § 64.2-531(A) for consistency with the trial court's decision, although this provision is now codified at Code § 64.2-531(B).

This appeal presents a question of first impression for this Court. We are tasked with deciding whether Clause III of Dickey's will overcomes the statutory presumption of nonexoneration imposed by Code § 64.2-531(A), but, in doing so, we must decide what constitutes a "contrary intent" that is "clearly set out in the will." While finding that the trial court misinterpreted the meaning of the word "clearly," this Court affirms the decision of the trial court.

BACKGROUND

Dickey died testate on November 15, 2013. His will, dated April 21, 2005, was probated on December 4, 2013, and his brother, Garnet Davis, Jr. was named executor. Dickey was survived by his wife, Rae Lee Davis (formerly Rae Lee Mills); his brother, Garnet; his sister, Susan Goforth; and his mother, Agnes C. Davis.

*The Will*

The portions of Dickey's will relevant to this dispute are as follows:

CLAUSE I:

> I direct that my Executor make payment of the just debts owed by me and my estate, including, but not limited to, any unpaid obligation which I may own at the time of my death, funeral expenses, cost of a monument or marker at my grave, administrative costs, and all estate taxes, including but not limited to, estate taxes on all property included in my estate for estate tax purposes. I further direct that all the estate, inheritance, succession, legacy, transfer, or other taxes imposed by reason of my death upon property passing under or outside this Will made payable by the laws of the United States, this state or any other state or country by reason of my death shall be paid out of my residuary estate.

CLAUSE III:

> I direct that my Executor sell the property which I inherited from the J. Garnet Davis Estate, that all debts and obligations of my estate be paid from the proceeds realized from the sale of the property, and that the remaining proceeds after payment of all

- 2 -

expenses, including the cost of administration of my estate, be divided as follows:

Two Hundred Thousand Dollars ($200,000.00) to Garnet Davis, Jr. The remainder shall be divided equally between Julie C. Davis Dermatini, Wendy Davis Dermatini, and Patricia Davis Wydra.

CLAUSE IV:

I give, devise, and bequeath the following properties to Rae Lee Mills:

. . . .

B. My real estate known as the Armentrout Farm.

CLAUSE VII:

The house which I own at Whispering Pines shall be sold by my Executor and the net proceeds, after the expense of the sale of the said property, I give to the Wytheville Presbyterian Church.

*The Property*

At the time his will was executed, Dickey owned Armentrout Farm free and clear of any encumbrance. In 2010, he consolidated various debts into a single $270,000 loan, secured by a deed of trust against the Armentrout Farm, and in 2002, he secured a $34,043.20 note with a deed of trust on his property known as Whispering Pines. At the time of Dickey's death, the balance on the Armentrout Farm mortgage was $184,125.28 and the balance on the Whispering Pines note amounted to $7,091.73.

*The Facts Established by Davis v. Davis*

The following facts are uncontested, were established by the Supreme Court in *Davis v. Davis*, 298 Va. 157 (2019), and adopted into the circuit court's letter opinion. Dickey was paralyzed in an accident in 1993. Following the accident, he gave Agnes power of attorney. Rae Lee worked on one of Dickey's farms, helping with Dickey's care and ultimately moving into his

- 3 -

home in 2010. In 2013, Dickey fell ill and was subsequently hospitalized before being transferred to a nursing facility. That October, Dickey and Rae Lee married. *Id.* at 163-64.

Later that month, Agnes used her power of attorney to transfer Dickey's real property, including Armentrout Farm, to Susan and Garnet by deeds of gift. Dickey passed away two weeks later. As record owners of the property, Susan and Garnet took an assignment of the Armentrout Farm mortgage in April 2014. In 2016, Garnet, as Executor of Dickey's Estate, initiated an aid and direction action in circuit court, in which one of the issues was the validity of Agnes's use of the power of attorney to transfer Dickey's real estate by deeds of gift prior to his death. This Court upheld these transfers, but the Virginia Supreme Court reversed, finding that gifting the property exceeded the scope of the power of attorney, thus invalidating the transfers. *Id.*

### *Facts Following Davis v. Davis*

Complying with our Supreme Court's decision, Susan and Garnet quitclaimed Armentrout Farm to Rae Lee for the purpose of effectuating Clause IV of the will. In 2021, the Executor of Dickey's Estate sold the property Dickey inherited from J. Garnet Davis's estate, as directed by Clause III, and used those funds to "pay the debts and obligations of the Estate." One such use of the Clause III funds was to exonerate the note secured by the Whispering Pines property, which was then sold in 2022 for $21,900. Deducting the closing costs, but not the $7,091.73 note secured by the property, the Estate then gave the Wytheville Presbyterian Church $19,639 to effectuate Clause VII. The $7,091.73 was paid by the Estate separately from those funds secured by the sale of Whispering Pines. On the advice of counsel regarding the Estate's obligations under the will, the Executor did not exonerate the Armentrout Farm mortgage.

*The Current Case*

Rae Lee contends that the mortgage on Armentrout Farm left to her by the will should have been exonerated by the Estate instead of passing with the land. The Executor and other beneficiaries of Dickey's Estate disagree. The Circuit Court of Wythe County, where Dickey's will was probated, referred this question to the Commissioner of Accounts. The Commissioner ruled in Rae Lee's favor, finding that Dickey's will clearly set out a contrary intent to the presumption of nonexoneration, as necessitated by Code § 64.2-531(A). In interpreting the statute, the Commissioner noted that the word "clearly" means to be "free from conjecture." As applied, the Commissioner compared Clause I to Clause III, finding that "[a]lthough [Clause I] may be more elaborate than some, it is not a 'clear' direction to the fiduciary to exonerate any note or debt directly attributable to the property in question." Clause III, however, was found to be "much more specific." The Commissioner determined that Dickey's direction to sell specific property to pay "*all* debts and obligations of [his] estate" was a clear manifestation of his intent to pay the debt on Armentrout Farm with those funds. The Estate and other beneficiaries then initiated proceedings in the circuit court challenging the Commissioner's finding.

By letter opinion dated June 27, 2023, the circuit court held that, under Code § 64.2-531(A), "a 'clear' and 'contrary intent' must be expressly and specifically made by the testator in their will in order to overcome the default standard of nonexoneration." The circuit court elaborated that Code § 64.2-531(A) requires an "explicit, expressed, and 'actually said,' directive by the testator in their will to transfer the property burden free." In so applying its interpretation of the statute, the circuit court found that the will did not clearly express an intent that the Armentrout mortgage be exonerated by the Estate. As such, the circuit court ruled that Rae Lee took the property subject to the mortgage.

Rae Lee timely noted an appeal of the circuit court's decision, arguing that (1) the circuit court misinterpreted and misapplied Code § 64.2-531(A) and (2) the circuit court erred in failing to apply the prohibition against approbation and reprobation doctrine. Despite finding the circuit court's interpretation of Code § 64.2-531(A) too broad, we agree with the circuit court's decision that Dickey's will did not clearly set out a contrary intent as necessitated by Code § 64.2-531(A), and we affirm.

ANALYSIS

Rae Lee's first assignment of error alleges that the circuit court improperly interpreted Code § 64.2-531(A) and subsequently erred in holding that Dickey's will did not clearly set out the necessary contrary intent to overcome the statutory presumption against nonexoneration. "Questions of statutory interpretation . . . are subject to *de novo* review on appeal, and we owe no deference to the circuit court's interpretation of the statutory scheme." *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022). When explicating the construction of a statute, the Court's "primary objective 'is to ascertain and give effect to legislative intent,' as expressed by the language in the statute." *Va Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 262-63 (2018) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "We must determine the legislative intent by what the statute says and not by what we think it should have said." *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541-42 (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)).

At common law, when a will specifically devised real property, any encumbrance or lien on the property would be exonerated by the estate, such that the recipient took the property free and clear. This proposition is derived from the Queen's Bench's decision in *Cope v. Cope*, 2 Salk. 449, 449, 91 Eng. Rep. 389, 389 (Q.B. 1707), which stated, "If a man mortgages lands, and covenants to pay the money, and dies, the personal estate of the mortgager shall, in favor of the

heir, be applied to exonerate the mortgage," which became authoritative law in Virginia upon the

General Assembly's passing of Code § 1-200.[2]  To add, the common law adopted the proposition

that if it appears that it was the testator's intention that the devisee should take the property

encumbered, there is an end of the question.  *See Galton v. Hancock*, 2 Atk. 424, 428, 26 Eng.

Rep. 658, 658 (Ch. 1743); *Estate of Fussell v. Fortney*, 730 S.E.2d 405, 409-10 (W. Va. 2012);

*see also* Mary F. Radford, *Wills, Trusts, Guardianships, and Fiduciary Administration*, 71

Mercer L. Rev. 327, 330 (2019) (citing *Woods v. Stonecipher*, 824 S.E.2d 633, 638 (Ga. Ct. App.

2019)).

      While some states still adhere to the common law, many states have abrogated the

doctrine by either enacting statutes or adopting the Uniform Probate Code.  *See Estate of Fussell*,

730 S.E.2d at 410; *Manders v. King*, 667 S.E.2d 59, 60 n.1 (Ga. 2008).  Because it is

commonplace for wills to direct the fiduciary to pay the testator's debts, these nonexoneration

statutes typically contain language indicating that a general directive to pay debts is not sufficient

to require exoneration of debts on specifically devised property.  *Id.* (quoting Ohio Rev. Code

Ann. § 2113.52(B), Neb. Rev. St. § 30-2347, and Uniform Probate Code § 2-607).

---

[2] Code § 1-200 states, "The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." There is, however, an unresolved question of whether the date of English common-law reception in Virginia is 1776 or 1792.  *See Tuscarora Marketplace Partners, LLC v. First Nat'l Bank*, 82 Va. App. 261, 279 n.17 (2024) ("There is considerable controversy existing as to the beginning date when Virginia started to receive the English common law.  *See, e.g.*, *White v. United States*, 300 Va. 269, 277 n.5 (2021) (positing that there is uncertainty of whether 1776 or 1792 is the date when Virginia started to receive English common-law as 'neither the adoption of English common law by the Fifth Virginia Convention on July 3, 1776, nor the General Assembly's 1792 enactments, backdate the Commonwealth's reception of English common law to the date of the Jamestown Charter [in 1607]' (citations omitted)); *see also* Stuart A. Raphael, *What is the Standard for Obtaining a Preliminary Injunction in Virginia?*, 57 U. Rich. L. Rev. 197, 208 (2022) (discussing in depth the confusion caused by the wording of the receiving statute).  We take no position on the matter as well." (alteration in original)).

Code § 64.2-531(A) imposes a default presumption that certain property contained within a will or a transfer upon death deed shall pass with any mortgage, pledge, security interest, or other lien existing at the time of the testator's death.[3]  Specifically, Code § 64.2-531(A) provides:

> Unless a contrary intent is clearly set out in the will or in a transfer on death deed, (i) real or personal property that is the subject of a specific devise or bequest in the will or (ii) real property subject to a transfer on death deed passes, subject to any mortgage, pledge, security interest, or other lien existing at the date of death of the testator, without the right of exoneration. A general directive in the will to pay debts shall not be evidence of a contrary intent that the mortgage, pledge, security interest, or other lien be exonerated prior to passing to the legatee.

The legislature specified that this presumption may be overcome only if a "contrary intent is clearly set out" in the testamentary document.  Code § 64.2-531(A).  The statute then provides that a "general directive in the will to pay debts" does not overcome the presumption of nonexoneration.  *Id.*

### I.  To be "Clear," the directive does not need to be "Explicit, Expressed, and Actually Said."

Here, the parties dispute what it means for a will to "clearly" set out an intent contrary to nonexoneration.  Relying upon *Burkholder v. Palisades Park Owners Association*, 76 Va. App. 577 (2023), the Executor argues that the circuit court's interpretation of the word "clearly" to mean an "explicit, expressed, and 'actually said[]' directive" is correct.  Supporting this contention, he asserts that the clause stating "[u]nless a contrary intent is clearly set out" in Code § 64.2-531(A) imposes a "clear-statement rule" like the statutory clause at issue in *Burkholder*, thus requiring an explicit or express statement in the will to overcome the nonexoneration

---

[3] When Dickey executed his will in 2005, common law exoneration was the rule in Virginia.  Code § 64.2-414(A) directs that a will is to be construed "as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." It is therefore undisputed that Dickey's will is interpreted pursuant to Virginia law as it existed at the time of his death in 2013, which includes the current nonexoneration statute at issue here.

presumption.  We disagree.  While the clause at issue does impose a "clear-statement rule," it imposes a lower burden than a "clear-statement rule" triggered by the words "expressly" or "explicitly."

*Burkholder* concerned Code § 55.1-1805, which provides that a property owners' association may not impose a charge against an owner for services provided to the owner or a related use of a common area "except as *expressly authorized*" by a law or the association's governing documents.  76 Va. App. at 580-81 (emphasis added).  In agreeing with the appellees that "the phrase 'expressly authorized' means what it says," this Court concluded that it imposes a clear-statement rule—the "legal drafter" must "use clarity of expression."  Id. (quoting *Clear-Statement Rule*, *Black's Law Dictionary* (11th ed. 2019)).  In essence, "the result sought must be unquestionably expressed in the text."  *Id.* at 587.  This Court then went on to explain that, contrary to the dissent's position, the term "expressly" is indeed synonymous with the word "explicitly."  *Id.* at 587-88.  Examining the dictionary treatment of the word expressly, the Court noted that the Oxford English Dictionary is among one of the many sources that defines "expressly" with the word "explicitly."  *Id.*; *see Expressly*, *The Compact Edition of the Oxford English Dictionary* (1971).  Contained within that definition, however, is also the word "clearly." *Burkholder*, 76 Va. App. at 588, *see Expressly*, *The Compact Edition of the Oxford English Dictionary*, *supra* ("[1]b. In direct or plain terms; *clearly*, explicitly, definitely." (emphasis added)).

By the Executor's reasoning, because the word "clearly" was used in the definition of "expressly," then the word "clearly" as used in Code § 64.2-531(A) necessitates an express statement.  This is not the case.  While a statement must be clear to be explicit or express, it need not be explicit or express to be clear.

Recognizing that the question of what satisfies "a contrary intent . . . clearly set out in the will" under Code § 64.2-531(A) is an issue of first impression, the circuit court relied upon other states' nonexoneration statutes to shed light. The problem with this approach, though, is that the circuit court examined nonexoneration statutes that specifically direct that an intent to exonerate be *express*. *See* 2013 Md. Code § 4-406(a) (stating that a contrary intent must be "*expressly* indicated" in a will to overcome nonexoneration (emphasis added)); N.C. Gen. Stat. § 28A-15-3 (precluding exoneration "unless an *express* provision" of the will confers a right of exoneration (emphasis added)). Consequentially, these interjurisdictional statutes cannot present the apples-to-apples comparison to Code § 64.2-531(A) that the circuit court attempted to make.

Just as this Court noted that qualifying "expressly" as something less than "explicitly" conflicts with the standard usage of the word, so does equating "clearly" with "expressly" and "explicitly." *Burkholder*, 76 Va. App. at 587. Indeed, both legal and common dictionary definitions of the word "clearly" omit any mention of "express" or "explicit." *See, e.g.*, *Clear*, *Black's Law Dictionary*, *supra* ("[1]. (Of language) so plain that a reasonable person would have no difficulty in comprehension; capable of being understood with only a single plausible interpretation and without any hint of obscurity, doubt, or ambiguity); *Clearly*, *The Compact Edition of the Oxford English Dictionary*, *supra* ("[3] Of mental vision: with undimmed perception, with full and complete understanding; distinctly; [4] With clearness and distinctness of expression or exposition; plainly; [5]a. Manifestly; evidently).

Considering the circuit court's decision to analyze North Carolina's nonexoneration statute to construe Code § 64.2-531(A)'s "clearly," it is appropriate to call attention to the fact that other North Carolina statutes distinguish between when something must be "clear" and when something must be "express." *See, e.g.*, N.C. Gen. Stats. 160A-174(b)(2), (3), (4) (holding that limits on a city's ordinance-making power impermissible when they negate matters otherwise

"expressly" made lawful; and when other laws "clearly" preempt local regulation). *Compare* N.C. Gen. Stat. § 12-3(1) (addressing rules of statutory construction, designates certain constructions "unless the context clearly shows to the contrary"), *with* N.C. Gen. Stat. § 12-3(2) (addressing rules of statutory construction, designates other constructions "unless it shall be otherwise expressly declared").

Just as "clearly" and "expressly" are not used synonymously by the North Carolina legislature, the same is true of Virginia's General Assembly. For example, under the similarly drafted Code § 64.2-544(A), also dealing with estates, a "general direction" to pay all taxes does not include certain estate taxes "unless the testator or settlor *expressly* manifests an intention that such taxes be paid out of his estate." (Emphasis added). Conversely, the nonexoneration statute at issue only requires that a contrary intent be "clearly set out." Code § 64.2-531(A). Examining the plain language of the statute, the term "clearly" establishes a lower burden than would the word "expressly" or "explicitly," and the circuit court erred in imposing this "far higher burden." The will need not have contained "an express and explicit directive to the contrary" to have overcome the presumption of nonexoneration.

Virginia has a long and well-developed line of case law predating the nonexoneration statute that supports our interpretation of it. The Supreme Court of Virginia has noted that "the intention of the testator, if it can be determined, is controlling, and all refinements of the law as to the abatement or ademption of legacies for the exoneration of realty specifically devised must yield to the power of the testator to dispose of his property as he desires." *Marcy v. Graham*, 142 Va. 285, 299 (1925). This intention "is the guiding star, and when this is ascertained and can be made effective, the quest is ended[,] and all other rules become immaterial." *Id.* The testator's intent is the "guiding star" for interpreting whether exoneration applies and operates in the backdrop of this case and others like it as courts delve into the language of the will itself.

*See, e.g.*, *Kellam Executors v. Jacob*, 152 Va. 725, 731 (1929) (finding that the exoneration of several land devises under a will was inappropriate where the testator's statements about whether devises were to be exonerated were vague, but nevertheless holding that "to [exonerate] w[ould] defeat the manifest intention of the testator").

Recognizing the importance of the testator's intent as the guiding star for our courts' interpretation of wills, and adopting our analysis in *Burkholder*, we find that a will does not need to expressly, explicitly, or "actually say" a contrary intent to nonexoneration for that intent to be considered "clearly set out." As held in *Burkholder*, the phrase "clearly set out" "means what it says . . . the 'legal drafter' must 'use clarity of expression.'" *Burkholder*, 76 Va. App. at 580-81.

### II. The Clause III language is no more than a general directive, and therefore does not overcome the presumption of nonexoneration.

We now turn to whether Dickey "clearly set out" an intention that his debts and obligations, including the lien on the Armentrout Farm, be exonerated through Clause III funds. Finding that both Clause I and Clause III are general directives, the decision of the circuit is affirmed.

Notwithstanding that Code § 64.2-531(A) does not need an express statement to overcome the presumption of nonexoneration, the General Assembly provided that a "general directive in the will to pay debts shall not be evidence of a contrary intent that the mortgage, pledge, security interest, or other lien be exonerated prior to passing to the legatee." That is precisely the case we have before us.

Rae Lee concedes that Clause I's direction to pay "just debts" is a general directive which will not overcome the presumption against exoneration. Nevertheless, Rae Lee asserts that Clause III's language—to "pay all debts and obligations" from the specified property sales proceeds—clears the statutory hurdle. While a clear statement of intent to exonerate the mortgage of specifically devised property need not be explicit or express, a mere instruction to

pay all debts and obligations is precisely the type of general directive that the General Assembly expressed was not enough to evince an intent to exonerate. There is no reference in Clause III to *any* specific debt. It does not instruct the Executor to pay a certain debt, or a specific mortgage. Rather, Dickey used the word "all" to describe which "debts and obligations" owed by his estate were to be paid with the Clause III funds. Clause III's language simply directs the Executor to the estate funds to use to satisfy specific monetary bequests.

Finding that "all debts and obligations" is analogous to a directive to pay "just debts," which is unequivocally too general to overcome the presumption of nonexoneration, Clause III's directive does not overcome the presumption, and Rae Lee is to take the property subject to any encumbrances.

### III. *The argument invoking the prohibition against approbation and reprobation was not argued below and is therefore not preserved for review.*

The second assignment of error Rae Lee identifies is that the circuit court erred in failing to apply the prohibition against approbation and reprobation against the Executor. We need not address this issue substantively, as Rae Lee failed to preserve it.[4] Clause VII directs the Executor to sell the Whispering Pines property and to donate the net proceeds to a church.[5] When Dickey passed, a mortgage of $7,091.73 existed on Whispering Pines. The Estate paid off that mortgage in 2021 with Clause III funds, and subsequently sold the property in 2022, donating the proceeds of the sale, minus the closing costs, to the church in accordance with the will. In doing so, the Estate did not deduct the $7,091.73 it had paid to exonerate the property.

---

[4] Rule 5A:18 dictates that an error will not be sustained to any ruling of the trial court unless the objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable a reviewing court to attain the ends of justice.

[5] Dickey's will did not convey the Whispering Pines *property* to the church, but only directed that "the net proceeds, after the expense of the sale of the property" be bequeathed to the Wytheville Presbyterian Church.

At the circuit court, Rae Lee argued that the Estate exonerated Whispering Pines when it donated the net proceeds to the church without deducting the mortgage cost. She used this premise to contend that the property was exonerated *because of* the Clause III directive "that all debts and obligations of my estate be paid." Put otherwise, Rae Lee argued at the circuit court that the Estate's payment of the Whispering Pines mortgage was confirmation of her interpretation of Clause III as a clear, specific directive to exonerate mortgages on specifically devised properties.

That is not the issue Rae Lee raises here. Instead, Rae Lee invokes the doctrine against approbation and reprobation—an estoppel doctrine preventing parties from taking contradictory positions over the course of the same litigation. *Wooten v. Bank of Am., N.A.*, 290 Va. 306, 309-10 (2015); *see also Matthews v. Matthews*, 277 Va. 522, 528 (2009). What Rae Lee raised at the lower court was an interpretation argument based upon extrinsic evidence, not an estoppel argument.[6] Rae Lee's second assignment of error is therefore waived.

CONCLUSION

Code § 64.2-531(A)'s requirement that a contrary intent be "clearly" set out in a will does not necessitate an express, explicit, or "actually said" statement of intent for a testator to overcome the presumption of nonexoneration. It does require, however, more than a general directive to "pay all debts and obligations." Because Dickey's will merely contains general

---

[6] Rae Lee claims to have preserved this argument by objecting to the circuit court's final order on approbation and reprobation grounds. This claim does not hold water. An objection stated in the endorsement of an order is not sufficient to preserve an issue that was not previously raised during trial and upon which the court did not have an opportunity to rule. *Hawkins v. Town of South Hill*, 301 Va. 416, 433-34 (2022). At no time prior to the post-ruling objection did Rae Lee even utter the words "approbate" or "reprobate," neither in written pleadings nor at oral argument presented to the trial court. This is insufficient to preserve the issue under Rule 5A:18. Furthermore, Rae Lee did not argue for the ends of justice exception to 5A:18 and this Court will not raise it sua sponte.

directives to pay debts, the Executor's decision to not exonerate Armentrout Farm was not in error, and the decision of the circuit court stands.

*Affirmed.*